UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

LAWRENCE ALBERT SWEET,

                Plaintiff,

v.                                                  Case No. 23-cv-980-pp

BROWN COUNTY SHERIFF DEPARTMENT, *et al.*,

                Defendants.

## ORDER SCREENING PLAINTIFF'S SECOND AMENDED COMPLAINT

On July 10, 2024, the court screened plaintiff Lawrence Albert Sweet's amended complaint and dismissed it because the plaintiff did not follow the court's instructions to limit his amended complaint to the provided complaint form and "'up to five additional sheets of paper, double-spaced so that the court can read them.'" Dkt. No. 20 at 3 (quoting Dkt. No. 15 at 21). The court explained that the plaintiff instead "attached forty-three pages of additional hand-written allegations," and that those pages "are difficult to read because there are no breaks and no blank space." Id. at 2–3. The court ordered the plaintiff to file a second amended complaint that complied with its previous instructions and "provide[s] a 'simple, concise, and direct' statement of his claims." Id. at 4 (quoting Bennett v. Schmidt, 153 F.3d 516, 518 (7th Cir. 1998)).

On July 19, 2024, the court received the plaintiff's second amended complaint. Dkt. No. 21. The second amended complaint is a completed amended complaint form that the court sent with the previous order and five

additional pages of allegations, which are double spaced. Id. The second amended complaint complies with the court's previous orders, so the court will screen it.

## I. Screening the Second Amended Complaint

### A. Federal Screening Standard

As the court previously explained, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the second amended complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, the second amended complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The second amended complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content

2

Case 2:23-cv-00980-PP   Filed 08/23/24   Page 2 of 15   Document 22

that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B. The Plaintiff's Allegations

The second amended complaint names as defendants Brown County, the Brown County Sheriff's Department, Brown County Health and Human Services, Vitalcore Health Services, Officer Loren, Officer Kraul, Administrator Heidi Michele, Corporal Bartels, Corporal Higgins, seven Jane Doe defendants and four John Doe defendants. Dkt. No. 21 at 1.

The plaintiff alleges that from March 2023 through January 2024, "officers, nurses [and] medical technicians failed to give [him] adequate, proper medical attention in a timely fashion on several occassions [sic]." Id. at 2. The plaintiff says that he has chronic high blood pressure that the defendants are aware of, yet "they failed to follow doctors' order of checking [his] blood pressure (3x) daily" and to provide him proper medication to control his blood

pressure. Id. He says that he "ended up at" a hospital in Green Bay five times during these months and was in intensive care for three days each time. Id. at 3. He alleges that "the nurse [and] med tech failed to respond to the officers emergency call promptly as [his] condition worsened, then claim that the blood pressure cuff was 'defective' on numerous occassions [*sic*], because they couldn't believe someone could have such an extremely high blood pressure." Id. at 3–4. The plaintiff claims that "they made [up] the claim of having 'defective' cuffs as a way of avoiding protocol and proce[]dures that called for hospitalization." Id. at 4.

The plaintiff alleges that he is "an enrolled member of the Bad River Tribe of Lake Superior Indians," and he is entitled to proper medical attention and care "as per [his] Treaty rights with the United States government." Id. He claims that "Brown County Sheriffs Dept Jail Division and its employees (administration, medical staff, and officers) failed to abide by the Brown County policies and proce[]dures, as well as the state and federal codes and guidelines for treatment of a person in custody of law enforcement." Id. at 4–5. He claims that those people ignored his doctor's orders as explained above, forced him to take medication by placing him in solitary confinement, provided him the wrong medication, left him in his cell after he called for help and failed to follow medical protocol "for possibly poisoning [him]." Id. at 5–6.

The plaintiff reiterates that he is a Native American, and as part of his "cultural beliefs" he has a "do not resuscitate, no life support, and no autopsy" directive in place with the hospital where he was sent five times while at the

4

Brown County Jail. Id. at 6. He says he told "Brown County Sheriff's Dept. Administration and medical staff" that he sees "pills as a form of life support, and [his] cultural beliefs were against them." Id. Medical staff told him that if he did not take the medications, he "would suffer heart attack, stroke, seizure, or even death," and if he refused staff would place him on "'medical observation'/solitary confinement." Id. at 6–7. He says that staff placed him on observation "until [he] finally agreed to take [his] medication." Id. at 7. He claims that "this practice is a violation of Native American Freedom of Religion Act." Id. He also says that Brown County staff told him that they spoke with the Wisconsin Attorney General, who informed them "that they were not obligated to follow a (do not re[susci]tate) directive." Id.

The plaintiff alleges that in April (he does not say which year, but the court infers he means 2023), Corporal Higgins told him that "mental health services of Brown County ordered [him] to be placed in a safety smock and room," and Higgins was "mandated . . . to insure that those orders were carried out." Id. at 7–8. The plaintiff told Higgins that he "refused [and] said [he would] fight." Id. at 8. He asserts that Higgins "showed direct indifference to the rules and law" and did not move the plaintiff to a safety cell. Id. Four days later, the plaintiff suffered a seizure and was sent back to the ICU at the hospital for an "emergency heart cathedar [*sic*] proce[]dure." Id. He says that Vitalcore and the Brown County Sheriff are responsible for his medical expenses, which include an MRI, CAT scan, stress test, EEG, EKG and the catheter procedure because he was incarcerated when he was hospitalized. Id.

5

The plaintiff seeks $444 million in damages. Id. at 9. He also asks the court "to order the defendants to properly do their jobs and consist[e]nt w[ith] any [and] all codes, rules, regulations written/know[n] by state [and] county gover[n]ment." Id. He also asks that Vitalcore and/or Brown County pay his hospital expenses and copays. Id.

C. Analysis

The court explained in the first screening order that because the plaintiff was a pretrial detainee at the time of the alleged events, the court analyzes his claim that he was denied adequate medical care under the Fourteenth Amendment. Dkt. No. 15 at 16 (citing Miranda v. County of Lake, 900 F.3d 335, 352 (7th Cir. 2018) (citing Kingsley v. Hendrickson, 576 U.S. 389 (2015)). The court explained that, to proceed on this claim, "the plaintiff must show that 1) 'the defendants acted purposefully, knowingly, or perhaps even recklessly' and 2) 'the defendants' actions were [not] objectively reasonable.'" Id. at 16–17 (quoting Pittman by & through Hamilton v. County of Madison, Ill., 970 F.3d 823, 827 (7th Cir. 2020) (internal quotation omitted). The plaintiff's allegations must demonstrate "'more than negligence but less than subjective intent—something akin to reckless disregard' to proceed on a Fourteenth Amendment claim." Id. at 17 (quoting Pittman, 970 F.3d at 353–54 (internal quotation omitted)).

The court did not allow the plaintiff to proceed on the claims in his original complaint against the individual defendants because he sued the defendants in their official capacities only. Id. The court explained that the

plaintiff's official-capacity claims were, in effect, claims "against the entity that he represents or for which the official works." Id. (citing Kentucky v. Graham, 473 U.S. 159, 165 (1985); and Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 690, n.55 (1978)). Because the defendants were alleged to be employees of the Brown County Jail, the court construed the claims as if alleged against Brown County. Id. at 17–18. The plaintiff does not specify that he wishes to sue the defendants in their official capacities but instead has named the employers as defendants. That includes Brown County, the Brown County Sheriff Department and Brown County Health and Human Services.

As the court also previously explained, "A local municipal or county government 'cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory.'" Id. at 18 (quoting Monell, 436 U.S. at 691 (emphasis in original)). The court explained that the plaintiff instead "'must demonstrate that there was an official policy, widespread custom, or action by an official with policy-making authority [that] was the moving force behind his constitutional injury.'" Id. (citing Estate of Perry v. Wenzel, 872 F.3d 439, 461 (7th Cir. 2017); and Daniel v. Cook County, 833 F.3d 728, 734 (7th Cir. 2016)) (internal quotations omitted). Because the original complaint did not allege "that any individual violated [the plaintiff's] rights under an official and unconstitutional Brown County policy, practice or custom," it did not state a claim against any of them. Id. at 18–19.

For the same reason, the second amended complaint does not state a claim against Brown County or any of its divisions or entities. The plaintiff does not allege that any individual acted according to Brown County policy or procedure when they failed to provide him proper medical care. He instead alleges that they *failed* to follow proper procedure for handing his medical issues. The second amended complaint alleges no basis to hold the County liable for the alleged actions of its employees. The court will dismiss Brown County, the Brown County Sheriff Department and Brown County Health and Human Services as defendants.

The same goes for Vitalcore. As the court explained in the first screening order, a private corporation like Vitalcore can be held liable under §1983 only if the plaintiff alleges that "'his injury was caused by a [corporation] policy, custom, or practice of deliberate indifference . . . or a series of bad acts that together raise the inference of such a policy.'" Id. at 19–20 (quoting Shields v. Ill. Dep't of Corr., 746 F.3d 782, 796 (7th Cir. 2014)). But the second amended complaint, like the original, does not allege that the plaintiff was provided inadequate medical care because of an unconstitutional policy, custom or practice of Vitalcore. The second amended complaint alleges nothing at all against Vitalcore; it says only that Vitalcore should be responsible for the plaintiff's medical costs. Because the second amended complaint does not provide any information to hold Vitalcore liable, the court will dismiss Vitalcore as a defendant.

The second amended complaint names several individuals as defendants—officers, Administrator Michele, corporals and several Jane and John Does. But its allegations specifically mention only Corporal Higgins, who the plaintiff says refused to move him to a safety room because the plaintiff said he would refuse and fight if Higgins tried to move him. The plaintiff claims that Higgins was indifferent to his medical needs by not moving him to the safety room despite his threats. He says that because Higgins did not move him to the safety room, he suffered a seizure and was hospitalized. A jail official is not necessarily deliberately indifferent for declining to take action that he knows will put him in harm's way. See Durley v. Taplin, Case No. 20-cv-1890, 2022 WL 4328912, at *4, *13 (E.D. Wis. Sept. 19, 2022) (granting summary judgment for nurse who did not provide nebulizer treatment to incarcerated person who "was screaming profanities and threatening physical harm to security staff" while claiming that he could not breathe). But here, the plaintiff's allegations leave room for the possibility that Higgins, as a corporal, could have used other methods to move the plaintiff to the safety room without risking his well-being, such as by calling for other officers to escort the plaintiff to a safety room or using restraints or incapacitating agents to subdue the plaintiff. Although it is a close issue, the court will allow the plaintiff to proceed against Corporal Higgins on a Fourteenth Amendment claim.

The second amended complaint does not state a claim against any other individual defendant. As the court explained in both previous screening orders, the plaintiff was required to provide enough information in his complaint for

the court to determine who violated his rights, what they did to violate his rights and when those violations occurred. Dkt. Nos. 15 at 21; Dkt. No. 20 at 4–5. The court advised the plaintiff that his complaint "must allege facts that provide the court and *each defendant* with notice of what *each defendant* allegedly did or did not do to violate his rights." Dkt. No. 15 at 21; Dkt. No. 20 at 5 (emphasis added).

The second amended complaint does not comply with those instructions. Other than in the caption, the second amended complaint does not name any individual defendant other than Corporal Higgins; it instead refers to groups of defendants collectively as "officer, nurses [and] medical technicians," "employees" of Brown County or the jail or as "administration, medical staff, and officers." The second amended complaint does not say how many nurses or medical technicians were involved or identify which defendants hold those positions. Nor does the second amended complaint specify when these violations occurred; although the plaintiff gives a range of time (March 2023 through January 2024), he says only that the defendants provided inadequate care "on several occassions [*sic*]" during those months. Dkt. No. 21 at 2.[1] A complaint must allege how each defendant was *personally* involved in the alleged conduct and *specifically* violated the plaintiff's rights. It is not enough to say that an unspecified group of unidentified persons collectively acted in the same way to violate the plaintiff's rights on an unspecified number of

---

[1] The second amended complaint later alleges that the violations occurred from February 2023 through January 2024, making the relevant time frame less clear. Dkt. No. 21 at 5.

occasions. See Brooks v. Ross, 578 F.3d 574, 580 (7th Cir. 2009) (affirming that "vague phrasing" in complaint that "'one or more of the Defendants' had engaged in certain acts or deprived [plaintiff] of his constitutional rights . . . does not adequately connect specific defendants to illegal acts"); Gray v. Weber, 244 F. App'x 753, 754 (8th Cir. 2007) (affirming dismissal of incarcerated person's §1983 complaint against defendants identified "only collectively as 'medical staff'"). Because the second amended complaint contains no specific allegations against any other individual defendant, it does not state a claim against any of them. The court will dismiss Officer Loren, Officer Kraul, Administrator Heidi Michele, Corporal Bartels and the Jane and John Doe defendants.

The plaintiff also alleges that he told "Brown County Sheriff's Dept. Administration and medical staff" that he refused to take pills for his high blood pressure because doing so is against his Native American beliefs. Dkt. No. 21 at 6. He says that unnamed staff placed him on observation until he agreed to take his medication. He claims that "this practice is a violation of Native American Freedom of Religion Act." Id. at 7. This claim suffers from two defects. First, the plaintiff again did not name any specific individual who forced him to remain on observation until he took his medication. The court could infer that Heidi Michele was involved because the plaintiff says "Administration" was involved, and the caption identifies Michele as the administrator of the Brown County Jail. But even if the court infers that Michele is a culpable defendant, the plaintiff has not identified a federal law

11

under which he can seek relief. The court has found no law titled the "Native American Freedom of Religion Act." The closest it has found is the American Indian Religious Freedom Act (AIRFA), which Congress enacted in 1978 and which is codified at 42 U.S.C. §1996. That statute provides:

> On and after August 11, 1978, it shall be the policy of the United States to protect and preserve for American Indians their inherent right of freedom to believe, express, and exercise the traditional religions of the American Indian, Eskimo, Aleut, and Native Hawaiians, including but not limited to access to sites, use and possession of sacred objects, and the freedom to worship through ceremonials and traditional rites.

42 U.S.C. §1996. But the Supreme Court has held that, "Nowhere in the law is there so much as a hint of any intent to create a cause of action or any judicially enforceable individual rights." Lyng v. Nw. Indian Cemetery Protective Ass'n, 485 U.S. 439, 455, (1988). Even if the court were to construe the plaintiff's claim as a claim under AIRFA, that law does not provide a cause of action under which the plaintiff can proceed against Michele or any other defendant.

The court could construe the plaintiff's claim as a claim under the Religious Land Use and Institutionalized Persons Act (RLUIPA), which provides heightened protection for incarcerated persons' exercise of their religion. Sossamon v. Texas, 563 U.S. 277, 281 (2011). But money damages are not available under RLUIPA, and no relief is available under RLUIPA against public employees like Administrator Michele. Vinning-El v. Evans, 657 F.3d 591, 592 (7th Cir. 2011) (citing Sossamon, 563 U.S. 277).

The court could construe the plaintiff's claim about being forced to take medication as a claim under the Free Exercise Clause of the First Amendment. Incarcerated persons retain a limited right to exercise their religious beliefs. See O'Lone v. Shabazz, 482 U.S. 342, 348 (1987). To proceed under the Free Exercise Clause, the plaintiff must show jail officials "intentionally and substantially interfere[d] with [his] ability to practice his faith" and that their actions were not "reasonably related to a legitimate penological interest." Garner v. Muenchow, 715 F. App'x 533, 536 (7th Cir. 2017) (citing Turner v. Safley, 482 U.S. 78, 89 (1987)). The plaintiff's claim does not satisfy these criteria. Although he alleges that being forced to take medication went against his religious beliefs, he also alleges that jail officials told him that he "would suffer heart attack, stroke, seizure, or even death" if he did not take the medication. Dkt. No. 21 at 6–7. Brown County and the jail have a strong, legitimate interest in keeping incarcerated persons in their care alive. The plaintiff cannot proceed on a claim that the jail violated his rights by forcing him to take medication that would keep him from suffering severe medical complications or dying.

To the extent that the plaintiff asserts that the defendants violated Brown County Jail policies or procedures or state law by providing him inadequate medical treatment, he does not state a claim. Neither a violation of jail policy nor a violation of state law establishes a constitutional violation. See Swarthout v. Cooke, 562 U.S. 216, 221–22 (2011) (state law); Pulera v. Sarzant, 966 F.3d 540, 551 (7th Cir. 2020) (jail policy). Similarly, the plaintiff's

allegations that the defendants committed medical malpractice do not state a claim because medical malpractice does not violate the Constitution. See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Miranda, 900 F.3d at 353. Although the court could exercise its supplemental jurisdiction over the plaintiff's putative state law claim of medical malpractice, see 28 U.S.C. §1367(a), the court is not allowing the plaintiff to proceed on federal claims against any medical defendant. Because the plaintiff has not stated a federal claim against any medical defendant, he may not proceed on any related state law claims.

## II. Conclusion

The court **ORDERS** that defendants Brown County, Brown County Sheriff Department, Brown County Health and Human Services, Vitalcore Health Services, Officer Loren, Officer Kraul, Administrator Heidi Michele, Corporal Bartels and all Jane Doe and John Doe defendants are **DISMISSED**.

The court **ORDERS** the U.S. Marshals Service to serve a copy of the second amended complaint and this order on defendant Corporal Higgins under Federal Rule of Civil Procedure 4. Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. §1921(a). Although Congress requires the court to order service by the U.S. Marshals Service, it has not made any provision for either the court or the U.S. Marshals Service to waive these fees. The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R.

§§0.114(a)(2), (a)(3). The U.S. Marshals Service will give the plaintiff information on how to remit payment. The court is not involved in collection of the fee.

The court **ORDERS** defendant Higgins to file a responsive pleading to the complaint.

The court **ORDERS** that the parties must not begin discovery until after the court issues a scheduling order setting deadlines for completing discovery and filing dispositive motions.

Dated in Milwaukee, Wisconsin this 23rd day of August, 2024.

**BY THE COURT:**

_____

**HON. PAMELA PEPPER**
**Chief United States District Judge**